05-1673-CBS

<u>AFFIDAVIT OF SPECIAL AGENT DEREK M. DUNN</u>

I, Derek M. Dunn, being duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"), and have been so employed since April 2003. Prior to becoming a Special Agent with ICE, I worked with the United States Customs Service as a Regulatory Auditor for seven years and nine months.  I am currently assigned to the Financial Investigations Group which primarily investigates crimes involving money laundering.  During my career, I have conducted and assisted in several investigations of money laundering and financial related crimes.  I have received specific training regarding these crimes during my tenure as a Special Agent.

2. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. I am submitting this affidavit in support of a criminal complaint charging MARIO VIANA, d.o.b. 12/17/65, with (1) bringing aliens to the United States without official authorization for commercial advantage in violation of 8 U.S.C.

§1324(a)(2)(B)(ii)[1], and (2) with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a)[2].

4. This affidavit does not contain all of the information known to me regarding this criminal investigation but those facts which are sufficient to establish probable cause for the issuance of the requested complaint.  These facts contained herein are either personally known to me, or have been related to me by other federal, state, or local law enforcement officers or

---

[1]8 U.S.C. §1324(a)(2)(B)(ii) provides as follows: Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien and in the case of an offense done for the purpose of commercial advantage or private financial gain [shall be guilty of a crime.]

[2]18 U.S.C. §1960(a) provides as follows: Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be [guilty of a crime.]
Unlicensed money transmitting business is defined at 18 U.S.C. §1960(b)(1)(A) as a money transmitting business which affects interstate or foreign commerce in any manner or degree and is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable.
Pursuant to M.G.L. c. 169, Section 3, a person is required to have a license to transmit money in interstate or foreign commerce.  Pursuant to M.G.L. c. 169, Section 16, a violation of this rule or regulation is punishable by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or both.

2

employees.

## II. FACTS AND CIRCUMSTANCES

### A. Background

5. Beginning in and about August of 2004, bank records from the Luso-American Credit Union ("Luso") were reviewed by the Internal Revenue Service, Criminal Investigations Division. The information indicated that there were a large volume of structured cash deposits into an account with an account number 01-23-303208 ("Account 01-23-303208"), under the name of Adilson DeSouza ("DeSouza") d/b/a MG Telecommunications ("MGT") located at 111 Central Street, Peabody, MA. Luso had a business card on file listing the business location of MGT as also that of 47 Main Street, Peabody, MA.

6. Surveillance of 47 Main Street, Peabody, MA. revealed that there was a variety store at that location. The store operated under the name of Family Market. Further investigation revealed that the owner of Family Market is Mario Viana. During the course of the investigation, investigators received a copy of a tax document filed by Mario Viana in support of a request for a bank loan. The tax document listed 47 Main Street as the address of his business.

7. Investigation has revealed that 111 Central Street is a residence. The deed for this property is on record with the Essex

3

County Registry of Deeds. The deed notes that the property was purchased by Mario Viana and his wife, Sandra Santos Viana as tenants by the entirety.

## III. BRINGING ALIENS INTO THE UNITED STATES

### A. Information Provided by CW-1

8. A cooperating witness ("CW-1") was interviewed and provided the following information. CW-1 was smuggled into the United States around March 2004. Prior to being smuggled into the United States, CW-1 was approached by MARIO VIANA while still in Brazil and was asked if he/she wanted to go to the United States. MARIO VIANA informed CW-1 that it would cost approximately $10,000 to be smuggled into the United States and the monies could be paid after he/she arrived in the U.S. MARIO VIANA required CW-1 to provide a deed to property in Brazil as collateral for the $10,000 fee. The agreement was that MARIO VIANA would return the deed to CW-1 after the $10,000 was paid off.

9. On October 19, 2004, CW-1 met with MARIO VIANA at Family Market to make a $1,000 payment toward CW-1's smuggling fee. After making the payment, CW-1 departed the store with a receipt that MARIO VIANA had written which included CW-1's name, the date, the amount paid of $1,000, and the remaining balance for CW-1's smuggling fee. MARIO VIANA also entered information into

4

a computer and provided CW-1 with a receipt which included similar information to the hand written receipt.

10. On November 9, 2004, CW-1 met with MARIO VIANA at Family Market again to make a $1,000 payment toward CW-1's smuggling fee. CW-1 provided MARIO VIANA with $900 in cash and a $100 money order. After making the payment, MARIO VIANA provided CW-1 with a hand written receipt similar to the one that he/she received on October 19, 2004. According to CW-1, MARIO VIANA's receipt book makes two copies, one for his records and one for the payee.

11. During the course of the investigation, investigators received a copy of the front and back side of the $100 money order that CW-1 provided to MARIO VIANA for payment toward his/her smuggling fee. The money order was made payable to MARIO VIANA and was deposited/negotiated at the Luso.

B. *Information provided by CW-2*

12. A cooperating witness (CW-2) was interviewed and provided the following information. CW-2 stated that he/she was smuggled into the United States around May 2004. Prior to being smuggled into the United States, CW-2 met with an individual in Brazil name "Darcio" who informed CW-2 that it would cost $9,000.00 to smuggle him/her into the United States from Brazil. CW-2 provided "Darcio" with a deed to his/her property in Brazil

as collateral. "Darcio" introduced CW-2 to MARIO VIANA. MARIO VIANA gave "Darcio" $5,000.00 toward CW-2's smuggling fee. CW-2 agreed to pay "Darcio" $4,000.00 and MARIO VIANA $5,000.00 plus five percent interest per month after he/she arrived in the United States. MARIO VIANA provided CW-2 with a receipt that references the $5,000.00 fee.

13. Since arriving in the United States, CW-2 has paid the $4,000.00 owed to "Darcio". The recipient of the money was Darcio Ines Teixeira. Although CW-2 has paid "Darcio" in full, he/she has not received the deed to his/her property in Brazil. CW-2 stated that he/she will not receive the deed until his/her debt to MARIO VIANA is paid in full. In December 2004, CW-2 made a payment of $1,000 to MARIO VIANA at the Family Market to cover interest for four months. MARIO VIANA provided CW-2 with a hand written receipt for the payment. As of April 25, 2005, CW-2 had only paid interest toward his/her $5,000 fee.

C. *Documents Found On MARIO VIANA*

14. On March 25, 2005, MARIO VIANA entered the United States at Washington Dulles International Airport from Brazil. MARIO VIANA was referred to secondary inspection. During a search,

6

Customs and Border Protection Inspectors found the following documents:

    - a deed to property in Brazil owned by Edson Viana de Souza

    - a handwritten note from Edson Viana de Souza signing the above deed to his property over to MARIO VIANA for 6,000 Brazilian Reais to be paid back within 90 days.

    - Brazilian identification documents for Rosana Aparecida De Souza and Vanessa Das Gracas Pereira.

    15. MARIO VIANA admitted to Customs and Border Protection Inspectors that the documents belonged to individuals who are illegally residing in the United States.

D. *Information Provided by DeSouza regarding smuggling*

    16. "DeSouza", whose name appears on the account of MGT, is a native and citizen of Brazil currently living in the United States. DeSouza was interviewed and provided the following information. DeSouza stated that he was smuggled into the United States around May 2002. Prior to coming to the United States, DeSouza met an individual named "Carlos" LNU in Brazil. DeSouza agreed to pay "Carlos" $7,000 to be smuggled into the United States. When DeSouza arrived in the United States, he discovered that "Carlos" was working at a store called Louisiana Travel located on Main Street in Amesbury, MA. Investigation has revealed that Louisiana Travel was owned and operated by MARIO VIANA. DeSouza was taken by MARIO VIANA to work at Louisiana

7

Travel until DeSouza's smuggling fee was paid off. DeSouza worked for approximately one year at Louisiana Travel and was not paid by MARIO VIANA as all monies earned were put to paying off his smuggling debt.

17. According to DeSouza, MARIO VIANA also operated a store called Louisiana Travel on 47 Main Street in Peabody, MA. MARIO VIANA changed the name of this store to Family Market. MARIO VIANA closed Louisiana Travel shortly after an article was written in a Brazilian newspaper which indicated that MARIO VIANA was sending money to Brazil to be used for smuggling people into the United States. DeSouza then worked at the Family Market in Peabody, MA. MARIO VIANA's brother, JULIO VIANA, also worked at the store. DeSouza's primary responsibility while working at Louisiana Travel and at Family Market was to conduct wire transfers for people sending money to Brazil.

18. MARIO VIANA told DeSouza that when he (VIANA) travels to Brazil, he offers to bring people into the United States for a fee of approximately $10,000. MARIO VIANA pays the smuggling fees but makes the individuals sign over their deeds to property in Brazil. In addition to the fee of approximately $10,000, MARIO VIANA also charges monthly interest of 5 to 7 percent until the fee is paid off in full. If the fee is not paid, MARIO VIANA keeps the deed to the property in Brazil.

8

19. While working at Family Market, MARIO VIANA requested DeSouza to open a bank account. With MARIO VIANA present, a bank account was opened at the Luso under DeSouza's name d/b/a MGT. The account was controlled by MARIO VIANA and Julio Viana.

20. Julio Viana filled out the deposit slips and gave them to DeSouza with the cash and/or checks to be deposited. Julio Viana also filled out the checks drawn against the account and had DeSouza sign them. Julio Viana also instructed DeSouza how much money to wire out of the account and to where. DeSouza was not aware how much of the money deposited into the account was from individuals sending money to Brazil or from individuals making payments toward their smuggling fee.

21. According to DeSouza, MARIO VIANA has a computer at the Family Market that he uses to maintain records of how much each person owes for their smuggling fee. At times, MARIO VIANA would tell DeSouza which individuals had made payments and how much so that DeSouza could update the computer records. Approximately 40 to 50 people owed MARIO VIANA smuggling fee money at the time DeSouza stopped working at the Family Market.

22. DeSouza has told investigators that he believes that MARIO VIANA keeps some of the deeds he obtains from people in Brazil at his house located at 111 Central Street in Peabody, MA

9

and at Family Market.   MARIO VIANA also transfers many of the deeds to a Power of Attorney in Brazil so that they do not stay in his name.

23. DeSouza's spouse currently lives in Brazil. According to DeSouza, his wife saw MARIO VIANA in Brazil around February or March 2005.   DeSouza's wife asked MARIO VIANA about coming to the United States.   MARIO VIANA told DeSouza's wife to transfer her property to him and he that would get her to the United States.

## IV. UNLICENSED MONEY REMITTING SERVICE

24. On January 27, 2005, the Massachusetts Division of Banks ("MDB") provided information regarding licenses issued for Family Market and/or MGT to operate as a money transmittal business. According to MBD, at that point in time neither business was licensed to remit monies.

25. Family Market had previously been issued a license to operate as an agent for Remesis Quisqueyana, Inc. and Uno Money Transfers.

26. However, according to the MDB, Family Market's license to operate as an agent for Remesis Quisqueyana, Inc. expired on June 30, 2003.

27. According to documentation received from Uno Money Transfers, Family Market's license to operate as one of their

agents was terminated on January 6, 2004.[1] Accordingly, neither Family Market nor MGT was licensed to remit money between January 6, 2004 and April 7, 2005.[2]

28. An analysis of Luso account number 01-23-303208 shows that from January 30, 2004 through July 21, 2004, approximately $1.2 million was deposited into the account of which approximately $920,000 was cash. Nearly all of this money was wire transferred out of the account to four companies located in the state of Florida as follows:

| Wire Beneficiary | Total Wired (Approx.) |
| --- | --- |
| Money Express | $ 647,000 |
| Intertransfers, Inc. | $ 257,000 |
| Golden Eagle, Inc. | $ 208,000 |
| Fox International | $  38,000 |

29. According to DeSouza, an associate of MARIO VIANA's in Brazil would pay the individuals receiving money in Brazil. A fax would then be sent from Brazil to Julio Viana's attention at Family Market with a listing of all individuals paid and amounts paid. The fax would also include a total amount with instructions on where to wire the funds. For example, DeSouza

---

[1]The license was terminated due to Uno Money Transfers inability to obtain personal information from the manager of the business, Julio VIANA, and the high number of returned electronic funds transfers.

[2]Mario Viana d/b/a Family Market, 47 Main Street, Peabody, MA received a remitting license from Vigo Remittance Corporation on April 7, 2005. The license is valid until June 30, 2006.

provided a copy of a document with a fax date of April 7, 2004
that was received at Family Market from Brazil showing
individuals names, amounts paid, and a total of $81,304.83.  On
April 8, 2004, two wire transfers totaling $81,304 were requested
to be sent to Money Express from two different accounts at the
Luso.  One wire in the amount of $39,304 was requested by DeSouza
to be drawn against the DeSouza d/b/a MGT account number 01-23-
3030208.  A second wire in the amount of $42,000 was requested by
Tatiana Viana to be drawn against account number 23-303213.  Both
Tatiana Viana and her husband Julio Viana have signatory
authority on this account.

30.  A review of Account 01-23-303208 held at Luso shows
that a check in the amount of $42,622.04, drawn against an
account in the name of Eduardo Craveiro, was deposited into the
MGT account on June 22, 2004.  On January 10, 2005, Eduardo
Craveiro was interviewed regarding the check drawn against his
account.  Eduardo Craveiro stated that the check was for the
purchase of land in Brazil and that an employee at his restaurant
brought him to a Brazilian store on Main Street in Peabody,
Massachusetts to send the money to Brazil.  Eduardo Craveiro did
not know the name of the store, owner, or employees but stated
that the store was located across the street from the Public
Library.  Family Market is located at 47 Main Street across the
street from the Public Library.  Eduardo Craveiro stated that the

money he sent was received in Brazil a few days later.

31. A further review of Account 01-23-303208 also shows that two checks in the amounts of $1,170 and $3,146, drawn against an account in the name of Fernando Bonini, were deposited on January 28, 2004 and March 31, 2004, respectively.

32. On January 13, 2005, Fernando Bonini, an illegal immigrant, was interviewed regarding the checks drawn against his account. Fernando Bonini stated that the checks were given to someone at Louisiana Travel in downtown Peabody for remission to Brazil. As previously stated, Louisiana Travel is operated by MARIO VIANA. Fernando Bonini stated that the money was sent to Brazil for the purchase of a house from his father.

**V. CONCLUSION**

33. Based on the foregoing information, I believe probable cause exists to conclude that MARIO VIANA, (1) beginning at a time unknown but no later than March of 2004 and continuing until the present, the exact dates being unknown, did knowingly or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, bring and attempt to bring to the United States in any manner whatsoever, aliens, regardless of any official action which may later be taken with respect to said aliens and did so the purpose of commercial advantage or private financial gain in violation of 8 U.S.C. §1324(a)(2)(B)ii) and beginning on or about

13

January 6, 2004 and continuing until at least April 7, 2005, did

knowingly conduct, control, manage, supervise, direct, and own

all or part of an unlicensed money transmitting business in

violation of 18 U.S.C. §1960(a).


Derek M. Dunn
Special Agent
Immigration and Customs Enforcement


Subscribed and sworn to before me this 22nd day of June, 2005


CHARLES B. SWARTWOOD
UNITED STATES MAGISTRATE JUDGE

14

JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____    **Category No.** II _____    **Investigating Agency** ICE/IRS

**City**  Peabody _____        **Related Case Information:**

**County**  Essex _____        Superseding Ind./ Inf. _____ Case No. _____
                                          Same Defendant _____ New Defendant _____
                                          Magistrate Judge Case Number _____
                                          Search Warrant Case Number _____
                                          R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  MARIO VIANA _____        Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address _____

Birth date (Year only): 1965  SSN (last 4 #): _____  Sex M  Race: H  Nationality: BRAZILIAN

**Defense Counsel if known:** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**  N. PELLEGRINI _____    **Bar Number if applicable** _____

**Interpreter:**   ☒ Yes  ☐ No        **List language and/or dialect:**   Portuguese

**Matter to be SEALED:**   ☒ Yes   ☐ No

       ☒ Warrant Requested        ☐ Regular Process        ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  **Ordered by** _____ on _____

**Charging Document:**   ☒ Complaint   ☐ Information   ☐ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony _____

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:**  6/22/05        **Signature of AUSA:** _[signature]_

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant   _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1 _____ | Alien Smuggling _____ | _____ |
| Set 2 _____ | Unlicensed Money Remitter _____ | _____ |
| Set 3 _____ | _____ | _____ |
| Set 4 _____ | _____ | _____ |
| Set 5 _____ | _____ | _____ |
| Set 6 _____ | _____ | _____ |
| Set 7 _____ | _____ | _____ |
| Set 8 _____ | _____ | _____ |
| Set 9 _____ | _____ | _____ |
| Set 10 _____ | _____ | _____ |
| Set 11 _____ | _____ | _____ |
| Set 12 _____ | _____ | _____ |
| Set 13 _____ | _____ | _____ |
| Set 14 _____ | _____ | _____ |
| Set 15 _____ | _____ | _____ |

**ADDITIONAL INFORMATION:**